IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION

ELECTRONICALLY FILED
11/11/2026
U.S. DISTRICT COURT
Northern District of WV

DIANA MEY

Plaintiff,

v.

Civil Action No. 5:26-CV-205 (Bailey)

QUEST HEALTH SOLUTIONS, LLC

Defendant

## COMPLAINT

Plaintiff Diana Mey states as follows for her Complaint against Quest Health Solutions LLC:

### Preliminary Statement

1. Plaintiff Diana Mey brings this lawsuit under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. Plaintiff also brings this lawsuit under the West Virginia Consumer Credit and Protection Act, W.Va. Code §§ 46A-6F-501 and 601, a state statute prohibiting abusive, unfair, and deceptive telemarketing practices.

### Parties and Jurisdiction

2. The Plaintiff Diana Mey is an individual residing in Wheeling, West Virginia.

3. Defendant Quest Health Solutions, LLC ("Quest") is a Florida corporation that conducts business in the State of West Virginia.

4. At all relevant times, through its marketing partners, Defendant conducted business in West Virginia, solicited business in West Virginia, engaged in a persistent course of conduct in West Virginia, and/or has derived substantial revenue from goods sold and services provided in West Virginia.

5. Because several of Plaintiff's claims arise under federal law, this Court has supplemental jurisdiction under 28 U.S.C. § 1331. This Court has supplemental jurisdiction under 28 U.S.C. § 1331 as to the remaining state law claims.

6. Because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district, venue is proper under 28 U.S.C. § 1391(b)(2). In particular, the telemarketing calls were received in this district and Defendant knowingly directed calls to a 304-area-code.

**Operative Facts**

7. Quest and its agents engage in widespread unsolicited telemarketing to promote the sale of Quest's durable medical equipment (DME) and diabetic supplies to consumers throughout the United States, including in West Virginia. Per its own website, Quest uses third-party lead-generators to generate these customers. *See* https://www.questhealthsolutions.com/qualify-for-a-cgm (last visited Oct. 8, 2026)

8. Upon information and belief, Quest-approved marketing vendors procure customer leads for Quest by using automated tools to place prerecorded calls that can reach thousands of potential consumers en masse. Upon information and belief, Quest establishes criteria for the leads it will accept from these vendors.

9. Mey's wireless telephone number (304) 381-XXXX (the "Number") has been listed on the National Do Not Call Registry continuously for at least the 30 days prior to the date of each of the unsolicited calls at issue in this matter. Mey uses this telephone line for purely residential purposes.

10. Mey's number is assigned to a Voice over Internet Protocol (VoIP) telephone service which allows for voice calls to be placed over a broadband Internet connection. Mey is charged by the VoIP telephone service provider VOIP.MS for each call or text received. VOIP.MS also charges Mey a per-minute rate of $0.0009 per minute for each minute of talk time, including voicemail time, for each call placed to her number.

11. Mey has never provided Quest or any of its marketing vendors prior express written consent to call her number, nor does she have an established business relationship with them.

12. While Mey has received well in excess of 40 unsolicited telemarketing calls from or on behalf of Quest to her Number since January 2026, the following calls evidence Quest's unlawful conduct:

(a) On January 9, 2026 at 6:43 p.m., Mey received a telemarketing call from spoofed number 304-368-2332. A prerecorded message played from "Robert with the diabetic wellness center" about a "new state-approved diabetic monitor which is 100% free and covered by your insurance." That message, sent to Mey's voicemail, was delivered in a robotic or automated voice.

(b) On January 14, 2026 at 5:28 p.m., Mey received a telemarketing call from spoofed number 304-384-5932. A prerecorded message played from "Robert with the diabetic wellness center" about a "new state-approved diabetic monitor which is 100% free and covered by your insurance." That message, identical in substance and in the same voice as the message that played on January 9, 2026, was sent to Mey's voicemail.

(c) On January 16, 17, 22, 23, 30, 31 and February 3, 4, 7 and 12, 2026, Mey received telemarketing calls from various spoofed "304" area codes. Each of these calls played a prerecorded message identical to the calls on January 9 and 14, 2026 from "Robert with the diabetic wellness center" about a "new state-approved diabetic monitor which is 100% free and covered by your insurance." These messages were likewise sent to Mey's voicemail.

(d) On April 23, 2026 at 7:13 p.m., Mey answered a telemarketing call from spoofed number 304-373-1706. A prerecorded message played from "Brian with the diabetic care company" about a "new state-approved diabetic monitor which is 100% free and covered by your insurance." The voice in this prerecorded message was identical to the voice in previous calls from "Robert with the diabetic wellness center." After the prerecorded message played, Mey was transferred to a live foreign-accented male, "Alan with diabetic medical supplies," who said he could help Mey get a FreeStyle Libre diabetic monitor that would "not cost you

anything out of your pocket because this monitor is covered 100% with your Medicare insurance."

(e) On April 24, 2026 at 1:20 p.m. Mey received a call from 352-443-8030. The caller identified herself as "Mary Wilson with Quest Health Solutions." Mary asked for "Miss Diana" and said the call was "about your diabetic monitor." This message was sent to Mey's voicemail.

(f) On April 24, 2026 at 4:10 p.m. Mey received a call from 352-443-8030. The caller identified himself initially as "Ben" from "AAA Medical Services." Ben said he was following up to a call made by his associate "regarding the non-pricking glucose monitor the Libre 3." Later in the call, Ben said AAA Medical Services was also known as Quest Health Solutions and was located at 3301 North University Drive in Coral Springs, Florida.

(g) Mey received calls on April 24, 28, and 29, 2026 from staff at her primary care physician's office regarding their receipt of faxes on each of those dates from "Diabetic Medical Supplies" that included a Medicare Detailed Written Order for a FreeStyle Libre 3 Plus continuous glucose monitor ordered for Diana Mey.

(h) On April 27, 2026, Mey received a call from 352-443-8030. "Mary Wilson" said she was from Quest Health Solutions calling for Diana Mey about a prick-less diabetic monitor that has "no out-of-pocket costs because your Medicare health insurance is gonna pay for it." Upon Mey's

request, Mary provided Quest's National Producer Number: 1760993968.

(i) On May 2, 2026, Mey received a call from 206-537-4209. A foreign-accented agent, "Mike," said he was calling about a diabetic monitor from Diabetic Medical Supplies. Mike said, "you spoke to one of our associates last week." Mey told Mike to put her number on his do-not-call list and to "stop calling me."

(j) Nevertheless, between May 3 and June 13, 2026, Mey received at least another 24 calls by or on behalf of Quest.

13. Prior to receiving these telephone calls from or on behalf of Quest, Mey never provided prior express written consent to be called by or on behalf of Quest or their respective agents.

14. In many instances, Quest, acting directly or through one of more authorized intermediaries, "spoofed" their calls by transmitting phony caller identification so that call recipients do not know the true source of the calls.

15. In many instances, Quest, acting directly or through one or more authorized intermediaries, failed to disclose truthfully, promptly and in a clear and conspicuous manner to the person receiving the call (a) the identity of the seller, (b) that the purpose of the call was to sell goods or services, and (c) the nature of the goods or services.

16. Mey was harmed by the calls as she was temporarily deprived of the legitimate use of her telephone, her privacy was improperly invaded, and the calls were frustrating, annoying, and disturbing. Mey was also billed for these calls by her services provider, VOIP.MS.

17. Upon information and belief, the acts complained of herein were either the direct acts of Quest or the acts of agents and/or subagents authorized to act on Quest's behalf.

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227(b)**

18. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call." *See* 47 U.S.C. § 227(b)(1)(A)(iii) and (b)(1)(B).

19. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

20. Under the TCPA, a person or entity can be liable for calls made on its behalf, even if the person or entity does not directly place the calls. 47 U.S.C. § 227(c)(5).

21. As explained by the FCC, the agency charged with interpreting and enforcing the TCPA, the applicable rules "generally establish that the party on whose

behalf a solicitation is made bears ultimate responsibility for any violations." *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Memorandum and Order, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

22. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to Mey's telephone number using prerecorded messages.

23. Defendant's actions, or those of agents operating on their behalf, were done willfully or knowingly.

**COUNT II**
**Violations of the TCPA, 47 U.S.C. § 227(c)**

24. Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf made telemarketing calls to Mey's residential telephone, which was listed on the do-not-call registry, in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2).

25. Mey received more than one telephone call within a 12-month period by or on behalf of Defendant in violation of the TCPA.

26. Defendant's actions, or those of agents operating on its behalf, were done willfully or knowingly.

**COUNT III**
**Violations of the WVCCPA, W. Va. Code §§ 46A-6F-101 et seq.**

27. Defendant and/or its agents committed abusive acts or practices as defined by W. Va. Code § 46A-6F-601(a)(2) because they engaged Mey repeatedly or continuously with behavior that a reasonable person would deem to be annoying, abusive, or harassing.

28. Defendant and/or its agents committed abusive acts or practices as defined by W. Va. Code § 46A-6F-601(a)(3) because they initiated outbound calls to Mey after she had indicated that she did not want to receive such calls.

29. Defendant and/or its agents knowingly engaged in the transmission of misleading or inaccurate caller identification information, including, but not limited to circumventing caller identification technology that allows consumers to identify from what phone number or organization the call has originated form, or to otherwise misrepresent the origin and nature of the solicitation. *See* W. Va. Code § 46A-6F-501(9).

30. Defendant's actions, or those of agents operating on its behalf, were done willfully or knowingly.

31. Accordingly, Mey is entitled to relief from Defendants as prescribed under W. Va. Code §§ 46A-6F-502 and 701, including actual damages and statutory penalties. Mey is likewise entitled to reasonable attorney's fees under W. Va. Code § 46A-5-104.

WHEREFORE, Plaintiff demands from Defendant statutory penalties and damages as provided by law, pre- and post-judgment interest, costs, attorney's fees, and whatever further relief the Court deems appropriate.

JURY TRIAL DEMANDED

**DIANA MEY**

By Counsel:

/s/ Andrew C. Robey
Ryan M. Donovan (WVSB #11660)
Andrew C. Robey (WVSB #12806)
Hissam Forman Donovan Ritchie PLLC
P.O. Box 3983
Charleston, WV 25339
T: 681-265-3802
F: 304-982-8056
rdonovan@hfdrlaw.com
arobey@hfdrlaw.com